**ARIBA, INC., Plaintiff,**

v.

**EMPTORIS, INC., Defendant.**

**Civil Action No. 9:07CV90.**

United States District Court,
E.D. Texas,
Lufkin Division.

July 29, 2008.

---

Bryce Warren Baker, Jennifer Esther Chen, Robert Thomas Haslam, III, Amy Kathleen Van Zant, Brian D. Kaider, and Jaideep Venkatesan, of Heller Ehrman LLP, Menlo Park, CA, Matthew James Hawkinson, Nathan Evan Shafroth, and Robert Daniel Fram of Heller Ehrman LLP, San Francisco, CA, Amanda Aline Abraham and Carl R. Roth of The Roth Law Firm, Brendan Clay Roth of Law Office of Carl R. Roth, Marshall, TX, for Plaintiff.

David J. Beck and Michael Ernest Richardson of Beck Redden & Secrest, Houston, TX, Eric D. Levin of Hinckley Allen & Snyder LLP, Jeffrey S. Gleason, Jonathan Andron, Stephen M. Muller, Wayne L.

Stoner, and Wyley S. Proctor of Wilmer, Cutler Pickering Hale & Dorr LLP, Boston, MA, Timothy Robert Jezek of Wilmer Cutler Pickering Hale & Dorr, Washington, DC, for Defendant.

## *ORDER ON SUBMISSION OF ISSUE ON FUTURE DAMAGES*

RON CLARK, District Judge.

Before the court are the parties' responses to the court's July 9, 2008 Order indicating it would consider submitting to the jury a question on future damages [Doc. # 126]. Subject to the court providing an additional instruction to the jury regarding injunctive relief, Defendant Emptoris, Inc. does not object to a jury question on future damages. *See* Doc. # 129. Plaintiff Ariba, Inc. objects, alleging that because it is entitled to a permanent injunction almost *per se* if the jury finds infringement, submission of a question on future damages would both confuse the jury and endanger Ariba's right to seek injunctive relief. *See* Doc. # 130.

The jury will not decide whether an injunction will issue, and, at this point, the court has not yet heard any evidence on whether an injunction should issue. The fact that some monetary number can be calculated as a royalty rate does not foreclose all other analysis under the traditional four-factor test applied to requests for injunctive relief. *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). While some amount of money could be calculated for any interference with property rights, that does not necessarily make the amount an adequate legal remedy. *See, e.g., Hoellen v. Annunzio*, 468 F.2d 522, 528 (7th

Cir.1972)(injunctive relief was appropriate where Defendant congressman's mass mailings of campaign literature to non-constituents produced a harm to Plaintiff's candidacy "not adequately compensable in damages"); *Omega Importing Corp. v. Petri–Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir.1971)(a high probability of confusion in a trademark case weighed in favor of granting an injunction because the injury to the Plaintiff's reputation "may not be fully compensable in damages").

Should an injunction issue, a jury finding on a future royalty could be used to set a reasonable amount to be paid into escrow during the period of any stay which might be granted. *See, e.g., Amado v. Microsoft Corp.*, 517 F.3d 1353 (Fed.Cir.2008)(where the district court's award of a post-judgment amount paid into escrow during stay of permanent injunction was approved by the Federal Circuit and remanded only so the district court could reconsider the reasonableness of its post-verdict royalty rate). If an injunction is not warranted, the jury verdict might be used by the parties as one factor in agreeing on a license, or by the court in arriving at an ongoing royalty rate for a compulsory license.[1] In either case, time and expense can be saved by having the damages experts testify once, rather than hold a separate mini-trial on the issue of future damages post-verdict. This procedure would encourage the experts to keep their testimony about past and future damages logically consistent, and to give reasons for any differences.

The holding in *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363 (Fed.Cir.2008) is distinguishable. While the Federal Circuit

---

1. Because the parties will have an opportunity to confer on the issue of future damages post-verdict and before final judgment is entered, the court's submission of this question to the jury does not run afoul of the Federal Circuit's statement in *Paice* that the court

"may wish to allow the parties to negotiate a license amongst themselves regarding future use of a patented invention before imposing an ongoing royalty." *Paice L.L.C. v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed.Cir. 2007).

did vacate the district court's grant of a permanent injunction in that case because the jury's award of future damages negated any potential for irreparable harm resulting from future sales, the jury award in that case made no distinction between past and future damages. In other words, the Plaintiff in *Innogenetics* automatically received future damages based on the jury's verdict, and, according to the Federal Circuit, was already adequately compensated for future infringement.

Here, a separate question on a proper future royalty rate would be submitted to the jury. Any finding on that question would be taken into account by the court and the parties, but would not automatically result in an award of future damages in that amount, nor in a denial of an injunction.

■ The Federal Circuit has recognized the need for the district court to provide a "concise but clear explanation of its reasons for the [future royalty] fee award." *Amado,* 517 F.3d at 1362. A jury determination of a royalty rate would certainly assist the court in achieving that goal. The Federal Circuit also stated that there a difference between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement, in the sense that determinations of infringement and validity are uncertain prior to judgment and "different economic factors" are involved. *Id.* at 1361–62; *see also Paice L.L.C. v. Toyota Motor Corp.,* 504 F.3d 1293, 1317 (Fed.Cir.2007)(Radar, J., concurring).

■ However, it is not strictly correct under present case law to say that the jury determines past damages based solely on information available at the time of the hypothetical negotiation. Calculation of past damages envisions the result of a hypothetical negotiation between the par-

ties at the time infringement began. *Applied Medical Resources Corp. v. United States Surgical Corp.,* 435 F.3d 1356, 1361 (Fed.Cir.2006). The jury may consider the infringer's actual sales and revenue up to the date of trial as part of the "book of wisdom." *Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568, 1575 (Fed.Cir.1988), *overruled in part on other grounds by Knorr–Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337, 1344 (Fed.Cir.2004)(citing *Sinclair Refining Co. v. Jenkins Petroleum Process Co.,* 289 U.S. 689, 698, 53 S.Ct. 736, 739, 77 L.Ed. 1449 (1933)); *see also Interactive Pictures Corp. v. Infinite Pictures, Inc.,* 274 F.3d 1371, 1385 (Fed.Cir. 2001)("an actual infringer's profit margin can be relevant to the determination of a royalty rate in a hypothetical negotiation.").

■ In calculating a reasonable royalty for past damages, every expert who has appeared in this court, for Plaintiffs and Defendants, has told the jury that as part of the hypothetical negotiation they are required to assume that the patent has been infringed and that the patent is valid. *See Georgia–Pacific Corp. v. U.S. Plywood Corp.,* 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970). None of the *Georgia–Pacific* factors suggests that at the time of the negotiation, the parties would have weighed the possibility that the patent was invalid or that the accused product might not infringe.[2] After all, by the time the jury reaches the question of damages, it has already decided that the patents are infringed and not invalid.

Presumably, the experts' testimony and the court's instructions to the jury on the *Georgia–Pacific* factors are intended to guide, not mislead, the jury. Client-serving testimony of experts aside, given the role of assumptions in economic analysis of

---

**2.** It has been suggested that the jury be in-     formed that, at the hypothetical negotiation,

damages, it is logically inconsistent to argue that a calculation based upon assumptions of infringement and validity would change when those assumptions are replaced by jury findings of the same facts. Of course, other factors such as availability of a design-around, the importance of the technology, the development of products for convoyed sales, and the relative market position of the parties may have changed by the time of trial. That evidence will be as available to the jury as it would be to the court at a post-trial hearing. If it helps the expert's client, only an incompetent would have failed to bring these facts before the jury when reading from his or her version of the "book of wisdom." In short, there is little or no evidence that a party could present post-trial, consistent with its trial testimony, that could not already be before the jury as it considers its verdict, unless the expert adopts a new theory, set of assumptions, or method of analysis.

Ariba's argument regarding the potential for juror confusion assumes that jurors neither listen to, nor comprehend, the legal arguments being made during trial and the instructions provided to them by the court. The court is confident that Ariba's experienced counsel and competent damages expert can make these concepts clear to the jury.

■ Determining a percentage rate or royalty per item to be applied in the future in a patent case is no more difficult than the task commonly performed by jurors in federal and state courts, when asked to calculate loss of future earning capacity, future medical expenses, future pain and suffering, or future lost profits. In a traditional personal injury or lost profits case, the experts and jury must determine what

is reasonably likely to occur in the future. Unlike those cases, which require prognostication, an ongoing royalty rate would be applied to future sales as they occur, meaning that a jury need not estimate those sales.

The proposed jury question in the court's July 9, 2008 Order is only one way in which this issue may be submitted. In formulating their jury instructions, the parties should consider whether the jury should be instructed regarding a future reasonable royalty rate, lost profits, price per unit, or some other appropriate measure of future damages. Of course, the instructions and question(s) will depend on the evidence submitted, and the theories of recovery pending at that time.

the parties would have considered the relative strength of their legal positions and teams, as well as the possibilities that a large infringer could "spend" a small inventor into the

ground or that an inventor could demand a large "cost of defense" settlement. This kind of expansion of the *Georgia–Pacific* factors will have to be authorized by a higher court